## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

FEDERAL DEPOSIT INSURANCE             )
CORPORATION,                          )
                                      )
                    Plaintiff,        )
                                      )
        vs.                           )        Action No. 00-CV-2170
                                      )
LEOPOLD H. GREIF,                     )
                                      )
                    Defendant.        )
_____)

## MEMORANDUM & ORDER DENYING
## MOTION TO QUASH SUBPOENAS DUCES TECUM

Currently pending before the Court is Motion to Quash Subpoenas filed by

Defendant Leopold H. Greif and Movant J.D. Rosen, Inc.  After review of the

motions and relevant filings, the Court **DENIES** the Motions to Quash (Docs. 12

and 13).

## FACTUAL BACKGROUND

On February 5, 1998, Defendant filed a Voluntary Petition in Bankruptcy in

the District of Kansas under Case No. 98-40253.  (Doc. 12).  In that case, an

adversary proceeding was filed on May 7, 1998, Case No. 98-07042 by the Federal

Deposit Insurance Corporation seeking its claim to be determined

nondischargeable pursuant to 11 USC 523(a).  (*Id.*)  On June 22, 1999, the United

States Bankruptcy Court entered a judgment on behalf of the plaintiff and against the defendant in the amount of $4,529,026.00 as a nondischargeable debt in the bankruptcy proceeding.  (*Id*.)  On July 6, 2000, this Court entered a civil judgment against Defendant Leopold Greif in the amount of $1 million plus pre- and post-judgment interest.  (Doc. 21.)  The judgment was issued in favor of the FDIC as Receiver for the failed Midland Bank of Kansas.  (*Id*.)  At the close of the MBK receivership, the FDIC as Receiver for MBK assigned the judgment to the FDIC in its corporate capacity.  (*Id.*)

Defendant has not tendered any funds in payment of the judgment amount, claiming that he does not have income or assets.  Plaintiff, however, claims that it has recently obtained documents indicating that Defendant and his wife are the sole owners of "Sequoia Corporation" with assets valued at $5.99 million. (Document 21 at 1.)  Plaintiff alleges that Defendant has used funds from Sequoia to pay "a significant portion" of the Defendant's personal expenses.  (Id. at 2.) Plaintiff additionally provides that Sequoia's accountant and an associate both represented to a mortgage lender that Sequoia is solely owned by and for the benefit of Defendant and his wife.  (*Id*.)

Accordingly, the FDIC served subpoenas on JDR and Director Weiss for the following information regarding Sequoia:

1. All Documents Related to: (a) the Defendant; (b) the Subjects, and each of them; (c) any person, entity or trust that the Defendant and/or any of the

Subjects disbursed funds to or received funds from; and/or (d) any entity or trust in which the Defendant and/or one or more of the Subjects has or had an ownership interest, during the time period defined above.

2.  Documents to be produced include, but are not limited to:

    a.  E-Mail Messages (Sent or Received) Related to the Defendant and/or any of the Subjects;
    b.  Formal and/or Informal Written Correspondence;
    c.   Bills and/or Invoices;
    d.  Evidence of Payment of Bills and/or Invoices;
    e.  Notes to Files;
    f.   Internal Memoranda;
    g.   General Ledgers;
    h.   Trial Balances;
    i.   Cash Receipt and Disbursement Ledgers;
    j.   Account Statements;
    k.   Tax Returns;
    l.   Source, Backup and/or Supporting Documentation for Tax Returns;
       m) Accounting Workpapers;
    m.  Payroll Records; and
    n.   Insurance Policy Records.

3.  All Documents relating to payments made to or for the Defendant and/or any of the Subjects [incl. Sequoia], including, but not limited to:

    a.  Insurance-Life;
    b.   Insurance-Medical;
    c.   Insurance-Auto;
    d.   Retirement Account;
    e.   Auto Lease or Financing;
    f.   Per Diem Travel Expenses;
    g.   Entertainment Expenses;
    h.  Consulting Fees; and/or
    i.   Salary.

4.  All Documents relating to relationships (including but not limited to, contractual, employment, management and/or ownership) You have and/or had, at any time during the period covered by this Subpoena, with the

Defendant and/or any of the Subjects and/or any company or entity owned and/or controlled by the Defendant.

According to Defendant, because there has not been payment of any portion of the judgment, there has been no execution or attempt to enforce the judgment and the judgment has not been renewed in accordance with Kansas law within the last 20 years, the judgment is dormant and unenforceable pursuant to K.S.A. § 60-2403.  (Doc. 12 at 2.)  Additionally, Defendant and Movant claim that the subpoena creates an undue burden and expense for them and serves "no legitimate purpose since the judgment is dormant and unenforceable."  (Doc. 12 at 2.)

## ANALYSIS

### A.      The Fair Debt Collection Practices Act Preempts Conflicting Kansas State Law.

When a state statute or law contradicts a federal statute or law, the federal law will always preempt state law.  On its face, the applicable state law in this matter is K.S.A. § 60-2403(a), which states "a judgment becomes dormant if an execution is not issued within five years from the date of entry of any judgment in any court of record in this state."  However, the Fair Debt Collection Practices Act (FDCPA) is a federal law controlling an agency of the federal government seeking to enforce a judgment.

When deciding which law is applicable, Federal Rule of Civil Procedure 69 provides guidance.  The Rule states that the federal government's enforcement by

writ of execution "must accord with the procedures of the state where the court is located," unless, "a federal statute governs to the extent it applies."  Fed.R.Civ.P. 69(a)(1).  The Fair Debt Collection Practices Act is such a statute.  *See United States v. Gianelli*, 543 F.3d 1178, 1182 (9th Cir. 2008).  Additionally, the FDCPA provides that it is "the exclusive civil procedure for the United States to recover a judgment on a debt."  28 U.S.C. § 3001.  The FDCPA further states that it "shall preempt state law to the extent such law is inconsistent."  28 U.S.C. § 3003(d).  *See also United States v. Rostoff,* 164 F.3d 63, 70 (1st Cir. 1999) (holding that if the government receives the beneficial interest of a debt, then the FDCPA is a proper collection vehicle).

Prior to the FDCPA, the diversity of states' laws with respect to federal debt collection interfered greatly with the efficiency of enforcement activity, leading Congress to create the FDCPA in 1990 in order to alleviate that conflict.  *United States v. Wadley*, No. 94-488-PAB-KLM, 2014 WL 1977240, at *1 (D. Col. May 15, 2014) (quoting H.R. Rep. No. 101-736, Discussion (Sept. 21, 1990)).  The FDCPA replaced state collection laws with a comprehensive federal statutory framework for the collection of debts owed to the federal government.  *Id*.; *see also N.L.R.B. v. E.D.P Medical Computer Systems, Inc.*, 6 F.3d 951, 954 (2nd Cir. 1993).*!*

The FDCPA does not impose a time restriction on the government's ability to enforce judgments through other methods (i.e., writ of execution or garnishment). 28 U.S.C. § 3203(a). Congress deliberately left out a time restriction of enforceability in the FDCPA, thus showing their intention for execution procedures to track the indefinite life of a judgment in favor of the United States. *See United States v. Pierce,* 231 B.R. 890, 892 (E.D.N.C., 1998). In *Pierce* the court affirmatively stated "pursuant to the FDCPA, the United States has an indefinite length of time in which to execute on a judgment against the judgment debtor." *Id*. Thus, the traditional rule that "a federal judgment is unrestricted in duration" is incorporated within the FDCPA. *Id.*

Because there is no authority from the Tenth Circuit Court of Appeals, similar decisions from other states and federal courts serve as persuasive authority for how the FDCPA should be applied to this issue. In *United States v. Gianelli*, *supra*, the Ninth Circuit ruled that because the FDCPA provides no time limit for the collection of debts by writ of execution, the FDCPA preempts state laws that prevent enforcement of a debt after a certain period from the entry of that judgment. 543 F.3d at 1183. Though the applicable state law in that case imposed a 10-year limitation on enforcement, the Court allowed the government to collect on a restitution judgment 12 years after it was entered. *Id*. Similarly, in *Soberanes Recovery Pool I, LLC v. Todd & Hughes Const. Corp.*, 509 F.3d 216, 219 (5th Cir.

2007), the Fifth Circuit found that a judgment was dormant under Texas state law because it was between two private parties.  The court did, however, specifically note that when a judgment is being enforced by a federal agency such as the FDIC, the FDCPA is the applicable law, thus evading the state's time-bar.

When analyzing Congress's purpose for the FDCPA and comparing other Courts' rulings on this issue, it is clear the FDCPA is the governing law.  As explained in *Wadley* and *Pierce*, the FDCPA's main purpose is to allow the federal government to recover an owed debt indefinitely under 28 U.S.C. § 3203(a)).  Applying K.S.A. § 60-2403(a) to this issue would completely disregard the FDCPA's purpose of having uniform federal procedures for the collection of debts to the federal government.  Setting this precedent could potentially lead to conflict between states and federal agencies as well as cause confusion and inefficiency in future debt collection judgments.

**B.      The Discovery Sought Does Not Constitute an Undue  Burden and Serves a Legitimate Purpose.**

Defendant and movant both claim that the subpoena seeks voluminous documents to be produced and would subject them to undue burden in violation of Fed.R.Civ.P. 45(d)(1), as it "would serve no legitimate purpose since the judgment upon which the subpoena is based is dormant and unenforceable."  (Doc. 12, at 2; Doc. 13, at 2.)  As stated above, however, the judgment is enforceable, not dormant.  The Court must then look at the scope of the Subpoenas.

Fed.R.Civ.P. 26(b) states:

> [p]arties may obtain discovery regarding any
> nonprivileged matter that is relevant to any party's claim
> or defense and proportional to the needs of the case,
> considering the importance of the issues at state in the
> action, the amount in controversy, the parties' relative
> access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and
> whether the burden or expense of the proposed discovery
> outweighs its likely benefit.  Information within this
> scope of discovery need not be admissible in evidence to
> be discoverable.

As such, the requested information must be nonprivileged, relevant, and

proportional to the needs of the case to be discoverable.  Furthermore, Federal

Rules of Civil Procedure 69(a) "authorizes discovery by a judgment creditor for

the purpose of discovering any concealed or fraudulently transferred assets."

***Magnaleasing, Inc. v. Staten Island Mall***, 76 F.R.D. 559, 561 (S.D.N.Y. 1977).

In post judgment discovery, information is relevant if it might "give the judgment

creditor useful and necessary information concerning the whereabouts of property

which might satisfy the judgment."  *Id.*

The evidence provided shows that Mr. Greif, assisted by JDR and Director

Weiss, established Sequoia to hold his assets, valued at $5.99 million as of June

2019.  (Exhs. 1, 4, 5.)  Additionally, Mr. Greif is routinely transferring tens of

thousands of dollars from Sequoia to his wife.  (Exhs. 2, 3.)  The Court agrees with

Plaintiff that these facts support the scope of its subpoenas served on Sequoia,

JDR, and Director Weiss.  As such, Defendant and movants motions to quash subpoenas fail.

IT IS THEREFORE ORDERED that the Movant and Defendant's Motions to Quash (Docs. 12 and 13) are **DENIED**.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas, on this 3rd day of August, 2020.

s/ KENNETH G. GALE
KENNETH G. GALE
United States Magistrate Judge